UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 15cr2927-BEN |
|---|---|
| Plaintiff, | |
| vs. | **ORDER DENYING MOTION TO DISMISS INFORMATION** |
| EDUARDO CERVANTES, | |
| Defendant. | |

Now before the Court is Defendant's Motion to Dismiss the Information. Upon review, this Court finds the underlying removal to be valid. Therefore, the motion to dismiss the Information is denied.

## I. BACKGROUND

Cervantes is currently charged with the crime of Attempted Reentry of a Removed Alien in violation of 8 U.S.C. § 1326(a) and (b). From the record before the Court, it appears that there is no dispute as to the following salient facts.

Cervantes is a citizen of Mexico. He has never had a lawful immigration status. He came to the United States in 1981 without being inspected or admitted. According to the Government, on March 31, 1983, he was convicted in the Southern District of California of illegal entry in violation of 8 U.S.C. § 1325. He was also convicted of a number of state misdemeanors between 1993 and 2001.

This motion to dismiss focuses on his next conviction. On December 31, 2001, Cervantes was convicted of violating California Health & Safety Code

- 1 -

§11351, Possession of Cocaine for Sale, and §11352, Transportation of a Controlled Substance.  On June 19, 2002, Cervantes was also convicted of violating California Health & Safety Code §11359, Possession of Marijuana for Sale, and §11360(a), Transportation of Marijuana.

Based on his criminal conviction for violating §11351 qualifying as an "aggravated felony," the Government issued (on June 24, 2002), a Notice of Intent to Issue a Final Administrative Removal Order.  On the next day, he was ordered removed to Mexico.  He re-entered the United States and was again removed in November 2006 and then again in June 2009.  On October 24, 2015, he re-entered the United States and is now charged with attempted reentry after having been previously removed.

## II.  CHALLENGING THE UNDERLYING REMOVAL ORDER

Cervantes has moved to dismiss the Information pursuant to 8 U.S.C. § 1326(d).  He argues that his removal order in 2002 was fundamentally unfair.  It was unfair, he argues, because his state court conviction for violating §11351 did not qualify as an aggravated felony.  And if it was not an aggravated felony, then the conviction did not support the removal order.  However, because Cervantes is not a Legal Permanent Resident, he must prove legal prejudice.  Because he has not proven legal prejudice, he has not satisfied the requirements of §1326(d) and his motion to dismiss is denied.

### A.  Collateral Attack Under §1326(d)

An individual charged with illegal reentry under 8 U.S.C. § 1326 has a right to challenge the removal that underlies the criminal reentry charge.  In the typical case, the criminal charge may be dismissed if the three prongs of §1326(d) are satisfied.

> Section 1326(d) . . . . authorizes collateral attack on three conditions: (1) that the defendant exhausted available administrative remedies; (2) that the removal proceedings deprived the alien of the opportunity for judicial review; and (3) that the removal order was

> fundamentally unfair. Removal is fundamentally unfair, in turn, if (1) a defendant's due process rights were violated by defects in his underlying removal proceeding, and (2) he suffered prejudice as a result of the defects.

*United States v. Garcia-Santana*, 774 F.3d 528, 532-33 (9th Cir. 2014) (internal quotation marks and citations omitted). "To satisfy the third prong—that the order was fundamentally unfair — *the defendant bears the burden* of establishing both that the deportation proceeding violated his due process rights and that the violation caused prejudice." *United States v. Raya-Vaca*, 771 F.3d 1195, 1201-02 (9th Cir. 2014) (citation omitted) (emphasis added).

### B. Exhaustion and Deprivation

Cervantes contends that he has exhausted the administrative remedies, that he was deprived of judicial review, and that he need not show prejudice. Because Cervantes's removal was an expedited removal, Ninth Circuit precedent compels the conclusion that administrative review was exhausted and judicial review was deprived.

> As the district court recognized and as the Government concedes, the statute governing expedited removal proceedings afforded Raya–Vaca no opportunity for administrative or judicial review. *See, e.g.,* 8 U.S.C. § 1225(b)(1)(C) ("Except as provided in the subparagraph on credible-fear interviews, a removal order ... is not subject to administrative appeal ...."); *id.* § 1225(b)(1)(A)(i) ("If an immigration officer determines that an alien ... who is arriving in the United States ... is inadmissible ..., the officer shall order the alien removed from the United States *without further hearing or review*...."); *see also Barajas–Alvarado,* 655 F.3d at 1082 ("The Immigration & Nationality Act (INA) precludes meaningful judicial review of the validity of the proceedings that result in an expedited removal order."). We therefore conclude that Raya–Vaca exhausted all available administrative remedies and was deprived of the opportunity for judicial review.

*Raya-Vaca*, 771 F.3d at 1202. However, the defendant still bears the burden of establishing legal prejudice from a fundamentally unfair removal. *Id.*

### C. Prejudice

Cervantes contends he is relieved of the burden of proving prejudice if he can

- 3 -

show that his §11351 conviction did not qualify as an aggravated felony. For this argument, Cervantes relies on *United States v. Aguilera-Rios*, 769 F.3d 626, 637 (9th Cir. 2014) and *United States v. Camacho-Lopez*, 450 F.3d 928, 930 (9th Cir. 2006). Cervantes argues that where a person is not legally removable on the grounds alleged by immigration, the entry of the illegal order is, in itself, a due process violation and prejudice. Cervantes is partly correct.

### *1. Prejudice Can Be Presumed for LPRs*

Cervantes correctly describes the rule as it applies to aliens who hold lawful permanent residents status. *Aguilera-Rios* concerned an alien deported on the basis of a fundamentally unfair order who was a lawful permanent resident. The Ninth Circuit explained why prejudice can be presumed. The court explained that the defendant "would have had the *right* to be in the United States, as a lawful permanent resident" but for the legally erroneous removal order. *Aguilera-Rios*, 769 F. 3d at 633 (emphasis in original); *see also United States v. Martinez*, 786 F.3d 1227 (9th Cir. 2015) (presuming prejudice for a lawful permanent resident alien removed on the basis of a mis-classified aggravated felony conviction); *Camancho-Lopez*, 450 F.3d at 930 (same). The key to the presumed prejudice holding lies in the alien's right to otherwise remain in the United States due to their lawful permanent resident status.

### *2. Prejudice Must Be Proven for Other Aliens*

Cervantes has never been a lawful permanent resident. If, as he contends, his removal in 2002 was the result of a legally incorrect order, but he had no *right* to continue to remain in the United States (as would a legal permanent resident), then legal prejudice cannot be presumed. Prejudice must still be proven. And proving prejudice remains the defendant's burden. *Raya-Vaca*, 771 F.3d at 1202. Here, Cervantes has not attempted to prove prejudice.

The removal documents indicate that Cervantes was removed through an expedited removal proceeding sanctioned by 8 U.S.C. §1228(b). Section 1228(b)

provides for the expedited removal of aliens who are not legal permanent residents and who have been convicted of an aggravated felony. Cervantes' removal order, which he now collaterally attacks, was the product of the expedited removal procedure. *See* Def.'s Mot. to Dismiss, Exhs. B & C; *see also United States v. Hernandez-Vermudez*, 356 F.3d 1011, 1013-1015 (9th Cir. 2004) (holding expedited administrative removal set out in §1228(b) applies to aliens who were not lawfully admitted for permanent residence or paroled and who entered the United States without inspection).

### a. *"Some Meaningful Review"*

Congress intended that expedited removal orders would *not* be open to collateral attack in a §1326 case. For expedited removal orders, Congress specifically eliminated from federal court jurisdiction the authority to hear a §1326(d) motion. *See* Title 8 U.S.C. §1225(b)(1)(D) (a court "shall not have jurisdiction to hear any claim attacking the validity" of an expedited removal order in a §1326 prosecution). Nevertheless, in this circuit since 2011, a defendant is permitted "some meaningful review" of an expedited removal order when the order is used as an element for a reentry offense. *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1087 (9th Cir. 2011) (holding §1225(b)(1)(D) unconstitutional "to the extent it prohibits 'some meaningful review' in a §1326 criminal prosecution"), *cert. denied*, 132 S. Ct. 1983 (2012).

### b. *Due Process Violation and Prejudice*

The problem here is that even if a due process violation were to be established, *Barajas-Alvarado* still requires a showing that the alien suffered prejudice. This defendant has not attempted to prove prejudice. The Ninth Circuit writes,

> Accordingly, we must conclude that §1225(b)(i)(D) is unconstitutional to the extent it prohibits *some meaningful review* in a §1326 criminal prosecution of a claim that the proceeding that resulted in the expedited removal order was fundamentally unfair in that the deportation proceeding violated the alien's due process rights *and the alien*

- 5 -

suffered prejudice as a result.*

655 F.3d at 1087 (internal quotations and citations omitted) (emphasis added); *see also United States v. Lopez-Vasquez*, 227 F.3d 476, 485-86 (5th Cir. 2000) (described by *Barajas-Alvarado* as a case where an alien's collateral challenge to an expedited removal order failed because he did not suffer any prejudice). *Barajas-Alvarado*, explained that even if a due process violation occurred, "we must still consider whether such error resulted in prejudice." *Id.* at 1089. Because the alien could not establish prejudice, the Ninth Circuit affirmed the district court's denial of the § 1326(d) motion to dismiss. *Id.* at 1091 ("Barajas-Alvarado failed to establish that it was plausible such relief would be granted, and therefore failed to establish any prejudice resulting from the alleged procedural violations . . . . We therefore affirm the district court's denial of his motion to dismiss the indictment and the subsequent judgment and sentence.").

Ninth Circuit decisions reviewing expedited removal orders since *Barajas-Alvarado* – removal orders which *per se* apply only to aliens who are not permanent residents – have likewise required a defendant to establish prejudice. For example, in *United States v. Garcia-Gonzalez*, 791 F.3d 1175, 1177 (9th Cir. 2015), the court explained:

> Garcia's predicate removal was an expedited removal at the border. The Constitution does not entitle "non-admitted aliens" to "any procedure vis-à-vis their admission or exclusion." "Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." Thus, the regularity of Garcia's expedited removal proceeding is judged solely by the procedures set out in 8 U.S.C. § 1225(b) and 8 C.F.R. § 1235.3(b).
> *To demonstrate prejudice* from a due process violation, Garcia must show that, absent the violation, it was plausible he would have obtained discretionary relief from removal. The only form of discretionary relief available in expedited removal proceedings is withdrawal of application for admission.

(citations omitted) (emphasis added); *see also Raya-Vaca*, 771 F.3d at 1206 ("To succeed in demonstrating that the 2011 expedited removal order was fundamentally

- 6 -

unfair, Raya-Vaca *must also establish that he suffered prejudice* as a result of the entry of the order.") (emphasis added); *United States v. Barragan-Camarillo*, 460 F. App'x 637, 639 (9th Cir. 2011) ("To the extent that Barragan–Camarillo brings an as-applied challenge to his own expedited removal order, his claim fails because, even if he could show that his due-process rights were violated, he *has not shown any resulting prejudice*.") (emphasis added).

### *3. Without Demonstrating Prejudice, Collateral Attack Fails*

To sum up, Cervantes has the burden of establishing prejudice. Cervantes's decision to stand on a presumption of prejudice is fatal to his collateral attack. This is especially true since the collateral attack of an expedited removal order of a non-legal permanent resident is a limited attack. Even if he could succeed at demonstrating that the §11351 conviction was not an aggravated felony, his collateral attack will fail without establishing prejudice. *C.f. United States v. Reyes-Bonilla*, 671 F.3d 1036, 1052 (9th Cir. 2012) (holding that violation of a right in an expedited removal hearing was not inherently prejudicial and without demonstrating a plausible claim to relief, alien was not actually prejudiced).[1]

### **D.  Fundamental Fairness of Removal Order**

Cervantes must show that the expedited removal order was fundamentally unfair and resulted in prejudice. He has not shown prejudice. Neither can he show unfairness.

He argues that his April 2001 state court felony conviction for violating California Health & Safety Code §11351, does not qualify as an aggravated felony as defined in 8 U.S.C. § 1101(a)(43)(B) ("The term 'aggravated felony' means – illicit trafficking in a controlled substance (as defined in section 802 of Title 21),

---

[1] To further establish any lack of prejudice, the Government also provides documents evidencing Cervantes suffered another conviction that qualifies as an aggravated felony drug trafficking offense. Specifically, Cervantes was convicted June 19, 2002, of violating California Health & Safety Code § 11359 by possessing marijuana for sale. With this second aggravated felony conviction, Cervantes would be unable to show prejudice, even if the earlier § 11351 conviction did not qualify as an aggravated felony.

- 7 -

including a drug trafficking crime (as defined in section 924(c) of Title 18)."). To determine whether an offense qualifies as an aggravated felony, courts use the categorical and modified categorical approaches of *Taylor v. United States,* 495 U.S. 575 (1990), and *Shepard v. United States,* 544 U.S. 13 (2005).

A drug trafficking offense is an aggravated felony under § 1101(a)(43)(B). However, Cervantes argues that his conviction is not the equal of the federal generic drug trafficking offense. He argues that the statute of conviction is overbroad and indivisible, rendering the state conviction ineligible for use of the modified categorical approach. If the modified categorical approach may be used, however, then the plea colloquy and other judicially noticeable documents make clear that Cervantes's conviction qualifies as a generic federal drug trafficking offense and thus an aggravated felony.

Since it is an aggravated felony, it legally supports his 2002 removal order. That in turn, undermines his motion to dismiss. Having now reviewed these documents, this Court finds that the modified categorical approach may be used; under that approach Cervantes's state drug conviction is an aggravated felony.[2]

---

[2] The Supreme Court describes the analytical approach to be used:
> The INA defines "aggravated felony" to include a host of offenses. §1101(a)(43). Among them is "illicit trafficking in a controlled substance." §1101(a)(43)(B). This general term is not defined, but the INA states that it "includes a drug trafficking crime (as defined in section 924(c) of title 18)." In turn, 18 U.S.C. §924(c)(2) defines "drug trafficking crime" to mean "any felony punishable under the Controlled Substances Act," or two other statutes not relevant here. The chain of definitions ends with §3559(a)(5), which provides that a "felony" is an offense for which the "maximum term of imprisonment authorized" is "more than one year." The upshot is that a noncitizen's conviction of an offense that the Controlled Substances Act (CSA) makes punishable by more than one year's imprisonment will be counted as an "aggravated felony" for immigration purposes. A conviction under either state or federal law may qualify, but a "state offense constitutes a 'felony punishable under the Controlled Substances Act' only if it proscribes conduct punishable as a felony under that federal law."

### *1. California Health & Safety Code § 11351 is Divisible*

Cervantes first argues that the state criminal statute is indivisible. This argument has no force. The Ninth Circuit has already decided that California Health & Safety Code § 11351 is divisible. *See United States v. Torre-Jimenez,* 771 F.3d 1163, 1169 (9th Cir. 2014); *see also United States v. Lopez-Gutierrez*, 607 F.App'x 719 (9th Cir. 2015) ("We use the modified categorical approach to determine the controlled substance that served as the basis for a defendant's conviction under California Health & Safety Code § 11351."); *United States v. Ruiz-Rosales*, 600 F.App'x 585 (9th Cir. 2015) ("[t]he district court correctly determined that California Health & Safety Code § 11351 is divisible . . . and therefore subject to the modified categorical approach."); *Becerra v. Holder*, 591 Fed.App'x. 610 (9th Cir. 2015) (agency properly used the modified categorical approach for cocaine conviction under § 11351). Further, with regard to an alien's conviction for possession for sale of cocaine, a §11351 conviction qualifies as a deportable drug trafficking crime under §1101(a)(43)(B). *Torre-Jimenez,* 771 F.3d at 1169; *cf. United States v. Valdavinos-Torres*, 704 F.3d 679, 689 (9th Cir. 2012) (deciding alien's conviction for possession of methamphetamine for sale under Cal. Health & Safety Code § 11378 qualifies as a deportable drug trafficking crime under §1101(a)(43)(B)). Consequently, the Court looks to Cervantes' record of conviction.

Under the modified categorical approach, a court may undertake a limited examination of the documents in the conviction record to determine if there is enough evidence to conclude the alien was convicted of the elements of the generically defined crime. *Id.* at 687. In this case, the Government has provided

---

*Moncrieffe v. Holder*, 133 S. Ct. 1678, 1683 (2013) (quoting *Lopez v. Gonzales*, 549 U.S. 47, 60 (2006)). *Moncrieffe* is not controlling because this case is not about a conviction for simple possession of marijuana. But *Moncrieffe*'s analysis of INA § 1101(a)(43)(B) applies to this case, because this case is about the California crime of possession for sale of cocaine and whether a state conviction constitutes a federal drug trafficking crime -- and thus an aggravated felony.

- 9 -

copies of the Information with handwritten notes and strike-throughs, a minute order, and the Abstract of Judgment. Although prior experience as state judge is not necessary to the task, this Court has served as a Superior Court Judge for the State of California and has some familiarity with the procedures and the records of California state court criminal proceedings.

### 2. The Record of Conviction Indicates Trafficking in Cocaine

A review of the conviction record confirms that Cervantes pleaded no contest to the § 11351 cocaine charge, as indicated by the minute order, the handwritten abbreviation "PNOLO" in the margin next to Count One of the Information (indicating a plea of *nolo contendere*) and the strike-throughs of the co-defendants' names, and the Abstract of Judgment which indicates Cervantes's convictions on Counts 1, 2, and 4 based upon a plea. Possessing cocaine for sale qualifies as a drug trafficking crime under 21 U.S.C. §841(a)(1), because cocaine is a controlled substance listed in the federal Controlled Substances Act. Therefore, his conviction of the California §11351 offense qualifies as a deportable drug trafficking crime under 8 U.S.C. §1101(a)(43)(B), and is a proper basis for his removal order. Because the Government was correct to deem the state conviction an aggravated felony, the removal order was not fundamentally unfair.

Alternatively, even if the strict modified categorical approach has not been satisfied, the documents of conviction are sufficient to satisfy the lesser standard of "some meaningful review" of an expedited removal order. *Barajas-Alvarado*, 655 F.3d at 1087.

### 3. Defendant's Novel Theory

Cervantes suggests that "because California and federal law require a defendant to *knowingly* possess a prohibited substance under their respective drug schedules, § 11351 is categorically broader than a federal drug trafficking offense because California prohibits more substances." (Def.'s Mot. at 8 (emphasis in original)). Cervantes argues that it is also indivisible and offers the following

example of overbreadth: "a defendant who possesses methamphetamine and intends to sell it, but reasonably believes the substance is khat, which is not proscribed under the CSA, is guilty of violating § 11351 . . . . But under *Jewell*, the same defendant is not guilty of a federal drug trafficking offense because khat is not listed as a federally controlled substance." *Id.*

*Cathione*, the psychoactive stimulant substance contained in the khat shrub, does appear to be listed as a Schedule I drug under the federal Controlled Substances Act as Administrative Controlled Substances Code Number 1235. However, putting that aside for the moment, to embrace Cervantes's argument would require federal courts to do what the Supreme Court sought to avoid with the categorical/modified categorical approach: after-the-fact mini trials. Courts would have to delve into the historical records and hold mini trials to see if it can be ascertained whether the defendant believed that he possessed something other than the controlled substance that he was convicted of actually possessing. Then, courts would have to determine which controlled substance it was that he mistakenly believed he possessed. Only then could it be determined whether there exists a federal analog under the CSA. The modified categorical approach is not supposed to work that way. It is only the drug of conviction that matters. As the Ninth Circuit explained, under the modified categorical approach "it makes no difference if [the defendant] actually possessed, or purchased, for sale cocaine. . . . Rather, what matters is whether [the defendant] was *convicted* of possessing or purchasing, for sale, cocaine, where cocaine is an element of the crime." *Medina-Lara v. Holder*, 771 F.3d 1106, 1113 (9th Cir. 2014) (emphasis in original). By extension, not only does it make no difference if the defendant actually *possessed* cocaine, it makes no difference if the defendant actually mistakenly *believed* he possessed a non-CSA substance.

This is a novel theory. It is based on little more than a theoretical possibility. It is not based on a realistic probability. That is a problem because to be

meritorious theory, the *mens rea* scenario must be a realistic probability, according to the Supreme Court.

> [I]n our view, to find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute requires more than the application of legal imagination to a state statute's language. *It requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime.* To show that realistic probability, an offender, of course, may show that the statute was so applied in his own case. But he must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues.

*Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007) (emphasis added). Cervantes, has not shown that § 11351 was applied to his own case to convict him under this novel scenario. The record of conviction gives no indication that Cervantes' conviction was based upon his mistaken belief that he possessed anything other than cocaine – the substance of conviction. The record certainly contains no indication that Cervantes mistakenly believed he possessed for sale a non-CSA, California-prohibited, drug for sale (such as khat), when he actually possessed cocaine. So, the first avenue for showing a realistic probability is a dead end. *Id.* ("To show that realistic probability, an offender, of course, may show that the statute was so applied in his own case.").

The second avenue is also a dead end because Cervantes has not pointed to other cases in which the California state courts applied this statute in this special (nongeneric) manner. *Id.* ("But he must at least point to his own case *or other cases* . . . .") (emphasis added). Cervantes's argument is based upon improperly hypothesizing about the unusual case, rather than the ordinary case, but it is the ordinary case that is to be the focus. *United States v. Sandoval-Orellana*, 714 F.3d 1174, 1179 (citing *James v. United States*, 550 U.S. 192, 208 (2007)).

This Court finds that Cervantes's approach is out of sync with conventional

*Taylor/Shepard/Descamps* analysis. *Descamps v. United States*, teaches that the modified categorical approach may be used for a divisible statute and describes that as "one that sets out one or more elements of the offense in the alternative." 133 S. Ct. 2276, 2281 (2013). Using the modified categorical approach in this case results in the uncontested conclusion that Cervantes's conviction qualifies as an aggravated felony for purposes of INA §1101(a)(43)(B). That finding dooms any collateral attack under § 1326(d). *Sandoval-Orellana*, 714 F.3d at 1180. Because the Government was correct to deem the state conviction an aggravated felony, the removal order was not fundamentally unfair and Cervantes was ineligible for discretionary relief.

### E.  Miscellaneous Arguments

Finally, there are some additional arguments that merit mention. Cervantes argues that the conviction record documents from 2002 have a "time stamp" of 2010. Cervantes argues that the time stamp suggests that perhaps the deportation officer in 2002 did not have the conviction documents to rely upon. And if that was true, it would be a due process violation. The argument is unpersuasive. "Some meaningful review" does not require the Government prove in 2016, precisely what conviction record documents were relied upon in 2002. That would turn a due process review into a contest over the Government's record-keeping competence. Further, that current documents appear to have a fax time/date stamp of 2010, hardly proves that the deportation officer did not have the documents in his file in 2002. Additionally, Cervantes has cited no case that holds that a non-admitted alien who is deported based on an aggravated felony is deported in violation of due process in these circumstances. Finally, Cervantes would still have to, and has not attempted to, establish that prejudice flowed from the violation.

Cervantes also argues that the Notice of Intent issued to Cervantes, did not specify a prohibited drug and was therefore defective on its face. While it is true that the Notice of Intent did not specify "cocaine," it did specify that he was

1  deportable because he was convicted of an aggravated felony as defined in
2  § 1101(a)(43)(B).  Cervantes cites no case that requires more specificity than that
3  which was provided here.  The Notice of Intent is sufficient based upon "some
4  meaningful review."

5        Cervantes argues that he should have been eligible for voluntary departure
6  under § 1229c(a)(1).  But that section applies only to formal removal proceedings
7  before an immigration judge.  Cervantes was placed in expedited proceedings where
8  § 1228(b)(5) applies and precludes all forms of discretionary relief.  *United States v.*
9  *Arrieta*, 224 F.3d 1076, 1081 (9th Cir. 2000) ("§ 1228(b)(5) . . . prohibits
10 discretionary relief in expedited removal proceedings").

11       Cervantes further argues that the Notice of Intent "*misadvised* Mr. Cervantes"
12 that he was not eligible for relief for deportation.  The argument is based on his view
13 that his drug trafficking convictions did not qualify as aggravated felonies.  Even
14 assuming for the sake of argument that he is correct, support is not found in the
15 cases upon which he relies.  For example, he cites *United States v. Pallares-Galan*,
16 359 F.3d 1088, 1096 (9th Cir. 2004).  But *Pallares-Galan* was concerned with the
17 form of relief known as cancellation of removal – a form of relief extended to legal
18 permanent residents.  As discussed above, Cervantes was not a legal permanent
19 resident.  Cervantes also cites *Arrieta*, (224 F.3d at 1079), but that case concerned
20 formal deportation proceedings before an immigration judge and the possibility of
21 § 212(c) relief.  As noted previously, Cervantes was removed through expedited
22 proceedings and *Arrieta* makes clear that in expedited proceedings under § 1228,
23 subsection (b)(5) applies and says that an alien is not eligible for discretionary
24 relief.  *Arrieta*, 224 F.3d at 1081.  Finally, Cervantes cites *United States v. Leon-*
25 *Paz*, 340 F.3d 1003, 1005 (9th Cir. 2003).  But *Leon-Paz* concerned a legal
26 permanent resident who committed first degree burglary at a time when the crime
27 was not considered an aggravated felony, and before the Antiterrorism and Effective
28 Death Penalty Act of 1996 (AEDPA) and the Illegal Immigration Reform and

immigrant Responsibility Act (IIRIRA) removed § 212(c) relief for aggravated felons. Cervantes, on the other hand, was not a legal permanent resident and committed his aggravated felonies after the passage of both AEDPA and IIRIRA. In sum, the Notice of Intent did not misadvise Cervantes.

Cervantes does not claim that the Government failed to advise him of the only form of discretionary relief possibly available to him: withdrawal of his application for admission.[3] But it would not matter. Unlike in regular removal proceedings concerning legal permanent residents, an immigration officer has no affirmative duty to inform a non-legal permanent resident applicant that he may ask to withdraw his application for admission. *United States v. Sanchez–Aguilar,* 719 F.3d 1108, 1112 (9th Cir. 2013) (rejecting for lack of prejudice, a §1326 collateral attack on a prior expedited removal order where there was no advice of discretionary relief); *United States v. Alarcon-Tapia*, 599 F.App'x 278, 279 (9th Cir. 2015) ("aliens in expedited removal proceedings do not have a due process right to be informed of their ability to withdraw their application for admission"); *United States v. Bayardo-Garcia*, 590 F.App'x 660, 662 (9th Cir. 2014) (same).

### III. CONCLUSION

Whether based on "some meaningful review" for expedited removal orders, or the comprehensive review that is employed for orders removing legal permanent residents in formal proceedings, the 2002 removal order in this case was based upon an aggravated drug trafficking felony. An alien convicted of an aggravated felony is conclusively presumed to be deportable. Title 8 U.S.C. § 1228(c). The order was not fundamentally unfair and even if the removal was based upon a conviction that does not qualify as an aggravated felony, it remains Cervantes's burden to establish prejudice. Because he was a non-admitted alien in expedited proceedings, Cervantes did not (and probably cannot) show any resulting prejudice. As such, his

---

[3] An alien who is present in the United States who has not been admitted is deemed by statute to be an "applicant for admission." 8 U.S.C. §1225(a)(1).

- 15 -

§ 1326(d) collateral attack fails. Defendant's Motion to Dismiss the Information is hereby denied.

DATED: July 8, 2016

_____
Hon. Roger T. Benitez
United States District Judge